FILED
NOV 1 8 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
BARBARA A. JYACHOSKY              )
1221 South Oakcrest Road          )
Arlington, Virginia 22202,        )
                                  )
            Plaintiff,            )
                                  )
    v.                            )   CASE NUMBER  1:05CV02251
                                  )
GORDON ENGLAND                    )   JUDGE: Henry H. Kennedy
Secretary,                        )
U.S. Department of the Navy       )   DECK TYPE: Employment Discrimination
Washington, D.C. 20350,           )
                                  )   DATE STAMP: 11/18/2005
            Defendant.            )
                                  )
```

JURY ACTION

Also served:   U.S. Attorney General
               Department of Justice
               Washington, D.C. 20530

               U.S. Attorney for the District of Columbia
               Department of Justice
               Washington, D.C. 20001

## COMPLAINT

Plaintiff Barbara A. Jyachosky ("Plaintiff"), by and through her counsel, brings this action pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626(b), and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 701 et seq., against Gordon England, in his official capacity as then-Secretary of the United States Department of the Navy. This action seeks money damages for illegal actions taken by personnel within the Department of the Navy, in particular the leadership of

1

the Naval Sea Systems Command (NAVSEA) and Program Executive Officer (PEO) for Ships, when they discriminated against Mrs. Jyachosky, then an employee of the Department, based on age and gender, and then retaliated against her for her participation in prior Equal Employment Opportunity ("EEO") activity.

NAVSEA and PEO Ships' leadership showed a continuous pattern of age and sex discrimination and reprisal against Plaintiff when they, in their latest acts of retribution, denied her a 2002-2003 performance rating due July 31, 2003, until she filed an EEO complaint on May 17, 2004 to obtain this rating. PEO Ships' leadership finally gave Plaintiff a 2002-2003 performance rating in July 2004, a year late. NAVSEA and PEO leadership did not approve a 2002-2003 monetary award, as she previously received. Nor did they set her 2003-2004 performance standards by July 31, 2003. Nor did they give her a 2003-2004 monetary award. Nor did they give her a 2002-2003 or 2003-2004 Quality Salary Award.

NAVSEA and PEO leadership would not have given her a 2003-2004 performance rating if she had not filed an EEO complaint on May 17, 2004 for the 2002-2003 performance rating. Plaintiff should not have had to file an EEO complaint to obtain her 2002-2003 performance rating when

2

Office of Personnel Management (OPM), Department of Defense (DoD), and U.S. Navy regulations spell out such actions within specific periods.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 because it involves an action arising under federal law.

2. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) because it is the judicial district in which the Department of the Navy headquarters is located, and in which the employment records relevant to the practices complained of in this complaint are kept.

## PARTIES

3. Plaintiff Barbara A. Jyachosky is a 62-year old adult female residing at 1221 South Oakcrest Road in Arlington, Virginia. By virtue of her employment with the Defendant, Plaintiff was at all relevant times an "employee" within the meaning of 29 U.S.C. § 630(f) of the ADEA.

4. Defendant is the United States Navy. Defendant is an "employer" within the meaning of 29 U.S.C. § 630(b) of the ADEA in that Defendant is, and has been at all times relevant to this action, an agency of the United States government, and has employed 20 or more employees for every

working day in each of 20 or more calendar weeks in the current preceding calendar year.

## FACTS

5.   Plaintiff began her employment with NAVSEA, Department of the Navy, on June 19, 1969, and worked there until the NAVSEA/PEO Ships' officials forced her retirement on August 3, 2004. Plaintiff retired with 41 years of federal service, at age 61, but her intent was to retire from federal service at age 65.

6.   Plaintiff worked mostly as a Public Affairs Officer, NAVSEA OOD2, and later as Director, Congressional and Public Affairs, Audit, Investigation, and Freedom of Information Act Officer, in PEO Surface Combatants/Aegis Program (PEO SC/AP), and later, PEO Theater Surface Combatants (PEO TSC) -- PEO Ships' predecessor organizations. Plaintiff attained a GS-15 promotion under Rear Admiral George Huchting, then-PEO SC/AP in September 1998.

7.   In December 1991, a train of events was set in motion with her then-supervisor, Captain David Thomas (Thomas), USN, Director, NAVSEA's Congressional and Public Affairs Office (SEA 00D), because of his dislike of female professionals, which Complainant did not at first realize.

4

At the time, Plaintiff was serving as Head, Public Affairs Branch, GS-14, SEA OOD2, and reporting directly to Thomas. Plaintiff began learning of Thomas' dislike of female professionals soon after she asked him to consider her for a GS-15 promotion about December 1991. Plaintiff was in her 28th year of federal employment at that time.

8.   Plaintiff's request for consideration for a GS-15 promotion was denied by Thomas due to his dislike of female professionals. As a result, her GS-15 promotion was delayed until September 1998 and Plaintiff lost a GS-15 salary for almost seven years (or over $30,000.00, if government Thrift Savings contributions are factored in).

9.   Until his retirement in July 1994, Thomas discriminated against Plaintiff based on her gender and age and retaliated against her for prior protected activity to avoid giving her a GS-15 promotion. Thomas so disliked female professionals, particularly Plaintiff, that he ignored two direct orders from then-RADM George Sterner (Sterner), USN, Vice Commander, NAVSEA, to research Plaintiff's GS-15 promotion with NAVSEA's then-position classification specialist, Ms. Pamela Timm. Thomas further retaliated against Plaintiff after Sterner rebuked him for not following his orders to check into Plaintiff's GS-15 promotion opportunity. In the meantime, Thomas recommended

himself, a male, for promotion to "Rear Admiral" in his yearly military fitness report.

10. Other examples of Thomas's harassing behavior against the plaintiff include:

- Treating Plaintiff differently from her only counterpart, Mr. William Scott (Scott), who then served as Head, Congressional Affairs Branch (SEA 00D2), with respect to annual and sick leave requests, work assignments, performance ratings, supervision, management, and office travel, among other factors.
- Bragging to Plaintiff of his reassignment of a former female subordinate. He unsuccessfully tried to do the same later with Plaintiff.
- Telling Plaintiff that he would "fire" all female NAVSEA environmental attorneys if they worked for him because he did not like their approach to handling media responses during USS JOHN PAUL JONES' sea trials in the 1990's under NAVSEA's purview.
- Telling Plaintiff that "sex" was the best thing.
- Threatening Plaintiff on or about May 1994, by demanding to know where she was although it was after her official working hours (4:00 pm). Plaintiff feared for her safety when he met her at the entrance to the office because of his obvious anger. A few minutes earlier, Thomas had learned covertly that Plaintiff had discussed his harassment of her with his supervisor, RADM Edward McGinley, USN (now retired), then Vice Commander, NAVSEA.
- Issuing a "Letter of Reprimand" against

6

Plaintiff, based on false allegations, in June 1994, weeks before he retired from the U.S. Navy. RADM McGinley later rescinded the letter after Thomas' retirement in July 1994.

11. As Plaintiff's career continued, Thomas' other male NAVSEA and Program Executive Officer (PEO) military successors, who were later Plaintiff's supervisors, continued a similar premeditated, consistent pattern of discriminatory and retaliatory behavior against Plaintiff, as described below:

   **A. Captain Gordon Peterson (Peterson), USN**, was Thomas' successor as Director, Congressional and Public Affairs (SEA 00D), and Plaintiff's first-level supervisor between September 1994 and April 1997.

   **1)** Peterson immediately continued Thomas' harassing and discriminatory actions against Plaintiff so he would not have to give her a GS-15 promotion, as she had requested, and as Thomas similarly denied.

   **2)** Like Thomas, Peterson treated Plaintiff differently from her only counterpart, Mr. Scott, with respect to annual and sick leave requests, work assignments, performance ratings, supervision, management, and office travel, among other factors.

   **3)** In addition, Peterson also harassed and discriminated against Plaintiff in terms of: forced overtime (up to 15-hour days, unlike Scott, her male counterpart, as if Plaintiff were a slave) during the week and on weekends; uncompensated overtime

7

compensation; and swearing at her late in the evenings so others would not hear him, among other abhorrent supervisory behavior.

4) Peterson's discrimination against Plaintiff on the basis of age, gender and reprisal culminated on April 25, 1997, when Peterson informed Plaintiff orally and in writing that he was immediately detailing her to PEO SC/AP, with the intent of permanent reassignment. Peterson based the forced reassignment on false allegations that Plaintiff had a large turnover, which was not true. Although Peterson and Scott had higher personnel turnovers than Plaintiff, NAVSEA male leadership did not reassign them, as male managers, compared to Plaintiff, a female manager.

5) Peterson set up Plaintiff to fail by reassigning her to manage congressional, audit, and investigations programs in PEO SC/AP in April 1997, although she had no prior experience managing those programs.

6) Peterson also got rid of various older SEA 00D workers, to reduce the median age of SEA 00D, by harassing them into retirement, death, or reassignment, including Plaintiff. For example, Ms. Anne Allison (SEA 00D1) died in 1996, the day after Peterson forced her to retire. Peterson caused such stress to Mr. John Gorman (SEA 00D1), that he died on the job about late 1997. Peterson also forced Ms. Sue Fili to retire in January 1997, four months before he forced Plaintiff's reassignment to PEO SC/AP.

7) By the time he completed his relentless harassment and discrimination against older SEA 00D

8

workers, Peterson reduced the average age of SEA 00D's workforce by 15 years or more and, thus, its annual salary costs. Peterson hoped that NAVSEA leadership would reward him with a recommendation for promotion to the rank of "Rear Admiral" because of his reduction of SEA 00D's annual salary costs.

**B. Captain Al Maiorano (Maiorano)**, USN, was Plaintiff's supervisor between December 1998 and January 2000 in PEO TSC (PEO SC/AP's successor organization). A few examples of Maiorano's harassing and discriminatory include:

    **1)** Initiating a management inquiry against Plaintiff based on false allegations. His inquiry imploded a few weeks after he initiated it, causing him to have "egg on his face" with RADM William Cobb (Cobb), USN, then-PEO TSC, who supported the inquiry (without first talking to Plaintiff, a senior PEO TSC employee).

    **2)** On two separate occasions, including April 7, 1999, closing Plaintiff's office door and threatening her by shaking his finger in her face while she sat at her desk. He threatened Plaintiff not to talk to Mr. Paul "Pete" Krukar (Krukar), her second-level supervisor, about getting experienced staffing, as her male supervisors and younger counterparts had.

    **3)** Increasing Plaintiff's responsibilities without a commensurate increase in her staffing. Maiorano threatened Plaintiff, telling her, "I'll get you" if she talked to Krukar again.

    **4)** Denying Plaintiff's request for compensated overtime on October 6, 1999 and other dates, although

he approved compensated overtime for her younger male and female counterparts.

**5)** Making deprecating comments at staff meetings about PEO TSC females, including Captain Debra Stiltner (Stiltner), USN (June 29, 1999); Ms. Judy Cooksey, a GS-14 civilian manager, referring to her as "Mis-Management" (July 20, 1999); RADM Kathleen Paige, USN (July 27, 1999); and Ms. Bilyana Anderson (August 31, 1999), among others. Maiorano did not make deprecating comments about PEO TSC males.

**6)** Shouting at the top of his lungs, "fuck you," to Plaintiff in her office at about 7:00 pm on November 11, 1999 (seconds after he slammed a counter loudly with his hand) to intimidate her for initiating an EEO complaint against him on October 6, 1999.

**7)** Maiorano is capable of discriminatory behavior, as he demonstrated against Plaintiff. For example, in January 1999, Maiorano told Plaintiff that the U.S. Navy had conducted three investigations against him, including two for racial bias. He did not tell Plaintiff what the third investigation involved.

**8)** Maiorano is capable of threatening behavior, as he demonstrated against Plaintiff. For example, in December 2000, NAVSEA's Inspector General conducted an investigation against Maiorano for threatening to "shoot" and "kill" then-PEO TSC contractor personnel. Their PEO TSC supervisor had them leave the workplace about 1:00 pm in case Maiorano carried out his threat.

**C. RADM William Cobb (Cobb), Jr. USN** (now retired) was the former PEO for Theater Surface Combatants (PEO TSC) -- PEO SC/AP's successor

10

organizations in almost 20 years. Cobb preferred that his long-time young lady friends in these PEOs, such as Ms. Bonnie Solarczyk (Solarczyk) and Ms. Bilyanna Anderson (Anderson), receive the first GS-15 promotions for females compared to the more mature Plaintiff.

**D. RADM Charles Hamilton** (Hamilton), USN, is the former Deputy, PEO TSC, and Deputy PEO Ships, to Cobb. He succeeded Cobb as PEO Ships' on May 16, 2003 after Cobb left the post to retire from the U.S. Navy soon thereafter.

   **1)** As Cobb's Deputy, and later as his successor, Hamilton, like Cobb, retaliated against Plaintiff, a mature female professional, for prior EEO activity and discriminated against her on the basis of sex and age when he redlined/targeted her job for abolishment in PEO TSC/PEO Ships' position about June-September 2002.

   **2)** Hamilton, like several other of Plaintiff's former male military supervisors, closed rank with Cobb, according to Navy tradition, to get rid of Plaintiff, because she was over age 40 (a protected age group), and in retaliation for her previous EEO and grievance activity.

**E. Alan Weyman** (Weyman) was Deputy/Executive Director to Cobb in then-PEO TSC and later PEO Ships between January 2000 and May 15, 2003. He is now Hamilton's Deputy for PEO Ships' Fleet. Weyman has been a member of the Senior Executive Service for several years. Weyman, joined forces with Cobb and Hamilton, to take reprisal against Plaintifft for prior EEO activity, and discriminated against her on the basis of age and sex.

12

    **1)** Weyman did not like becoming Plaintiff's first-level supervisor about January 2000, after she initiated an EEO complaint against Maiorano in October 1999. During the next three years, Weyman took consistent premeditated actions to harass and discriminate against Plaintiff, hoping she would find another job or retire, as described in each of the three counts below.

        **a)** Weyman, Hamilton, and Cobb worked in concert to deny Plaintiff getting a 2002-2003 performance rating until she filed an EEO complaint on May 17, 2004 to get it, at a great cost of time and legal expense. Nor did they give Plaintiff 2002-2003 and 2003-2004 monetary awards, as she had gotten in past years.

**F.** NAVSEA leadership, including **Vice Admiral Phillip Balisle (Balisle)**, USN, then-Commander, NAVSEA, and **RADM Anthony Lengerich (Lengerich)**, USN, then-Vice Commander, NAVSEA, and **Mr. Peter Brown (Brown)**, then-Executive Director (SES), NAVSEA, were the Plaintiff's sixth, fifth and fourth consecutive supervisors before they, Hamilton, and Weyman forced Plaintiff to retire on August 3, 2004.

    **1)** Balisle, Lengerich and Brown discriminated against Plaintiff on the basis of sex and age, and retaliated against her for past EEO activity, by abolishing her job on June 29, 2003, and dismissing her April 24, 2003 grievance in December 2003, based on false allegations.

    **2)** Balisle, Lengerich, and Brown concocted a NAVSEA policy not to give 2002-2003 performance ratings and awards to mature female and male

13

professionals, such as Plaintiff, whose jobs they abolished on June 29, 2003 in the 2002-2003 downsizing - only <u>one</u> day before the 2002-2003 performance year ended on June 30, 2003. Included were NAVSEA and PEO employees, "age 40 and over" and those who filed EEO complaints and grievances prior to June 11, 2003.

12. In sum, NAVSEA's close-knit predominant male military leadership allowed Thomas, and Plaintiff's successive male military and Senior Executive Service supervisors and NAVSEA leadership, to continue their corrosive, discriminatory, and retaliatory actions against the Plaintiff for many years.

## CLAIMS FOR RELIEF

**Claim I: Discrimination in Employment Based on Age**

13. The foregoing allegations stated above are incorporated by reference as if set forth herein.

14. About September 2002, Command and PEO officials Balisle, Lengerich, Brown, Cobb, Hamilton and Weyman, among officials in five other PEOs, abolished almost 500 positions in the 2002-2003 Command downsizing. Those affected were age 40 and over, including Plaintiff. These officials would also deny these individuals their 2002-2003 performance ratings and monetary awards, which occurred with Plaintiff.

14

**15.** Balisle, Lengerich, Brown, Cobb, Hamilton and Weyman treated Plaintiff differently from her younger colleagues when it came to 2002-2003 performance monetary awards. Hamilton and Weyman gave monetary awards to the younger colleagues, according to Weyman and Hamilton's sworn statement on November 18, 2004, but not to the plaintiff. They also gave 2003-2004 performance monetary awards to Plaintiff's younger colleagues.

**16.** PEO officials gave a Quality Salary Increases (QSI) to a younger colleague(s) of Plaintiff, but not to her, a mature female professional. Plaintiff requested a QSI from Mr. Alan Weyman, PEO Ships, on December 9, 2003.

**17.** Several days after PEO Ships' officials gave Plaintiff a 2002-2003 performance rating, NAVSEA and PEO Ships' officials gave her a Management Directed Reassignment (MDR) letter, which forced her to retire on August 3, 2004. The MDR was in opposition to her physician's several letters to the agency about further reassignments for Plaintiff. Thus, in terminating the Plaintiff's employment, the Agency discriminated against her on the basis of her age in violation of the ADEA and Title VII.

**18.** Plaintiff lost substantial employment benefits and suffered other incidental and consequential damages and expenses. The damages include lost wages, salary,

15

benefits, attorney fees, and certain other incidental and consequential expenses and losses and increased medical expenses.

19. Because the acts taken toward Plaintiff were carried out by managerial employees acting in a deliberate, cold, callous, and intentional manner in order to injure and damage plaintiff, Plaintiff requests an award of punitive damages in an amount to be determined at trial.

**Claim II: Discrimination in Employment Based on Gender**

20. The foregoing allegations stated above are incorporated by reference as if set forth herein.

21. Balisle, Lengerich, Brown, Cobb, Hamilton, and Weyman denied a 2002-2003 performance rating and monetary award to Plaintiff, a female professional, but not to her male GS-15 counterparts.

22. Plaintiff lost substantial employment benefits and suffered other incidental and consequential damages and expenses. The damages include lost wages, salary, benefits, attorney fees, and certain other incidental and consequential expenses and losses and increased medical expenses.

23. Because the acts taken toward the Plaintiff were carried out by managerial employees acting in a deliberate,

16

cold, callous, and intentional manner in order to injure and damage plaintiff, Plaintiff requests an award of punitive damages in an amount to be determined at trial.

**Claim III: Retaliation for Opposing Discrimination**

24. The foregoing allegations stated above are incorporated by reference as if set forth herein.

25. On June 29, 2003, NAVSEA and PEO Ships' leadership abolished Plaintiff's GS-15 position and reassigned her to NAVSEA's Placement Program in retaliation for prior EEO and grievance activity.

26. NAVSEA and PEO Ships' leadership also denied plaintiff a 2002-2003 monetary award, as she had gotten in past years, in retaliation for prior protected activity. Plaintiff had to file an EEO complaint on May 17, 2004, to force NAVSEA and PEO Ships' officials to give her a 2002-2003 performance rating. Nor did they give Plaintiff a 2003-2004 monetary award. They gave Plaintiff a 2003-2004 performance rating only because she filed an EEO complaint on May 17, 2004 to obtain her 2002-2003 performance rating. Nor did they set her 2003-2004 performance standards by July 31, 2003

27. Plaintiff lost substantial employment benefits and suffered other incidental and consequential damages and

17

expenses. The damages include lost wages, salary, benefits, attorney fees, and certain other incidental and consequential expenses and losses and increased medical expenses.

28. Because the acts taken toward the Plaintiff were carried out by managerial employees acting in a deliberate, cold, callous, and intentional manner in order to injure and damage plaintiff, Plaintiff requests an award of punitive damages in an amount to be determined at trial.

### REMEDIES

WHEREFORE, Plaintiff respectfully requests that the Court issue a judgment granting her the following relief:

PECUNIARY LOSSES

1. Attorneys' expenses;
2. 2002-2003 monetary award;
3. 2003-2004 monetary award;
4. 2002-2003 or 2003-2004 Quality Salary Increase;
5. Court fees;
6. Server fees;
7. Fees for physician therapy due to workplace discrimination, reprisal and harassment

NONPECUNIARY LOSSES

18

1. Pain and suffering

Respectfully submitted,

*[signature: Pat Cresta-Savage]*

Pat Cresta-Savage, Esq.
Law Office of Pat Cresta-Savage
601A Indiana Avenue, NW
Suite 101
Washington, DC  20004
(202) 393-1666

**JURY TRIAL DEMANDED**

Plaintiff Barbara Jyachosky demands a trial by jury of all issues so triable as of right.