UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BARBARA A. JYACHOSKY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DONALD WINTER, Secretary, )<br>Department of the Navy, )<br>)<br>Defendant. )<br>_____) | Civil Action Nos. 04-1733, 04-1734, 05-239,<br>05-271, and 05-2251 (HHK) |

## DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO HIS CONSOLIDATED MOTION TO DISMISS OR TRANSFER VENUE

Defendant respectfully submits this reply in support of: (1) his Consolidated Motion to Dismiss or Transfer Venue in Civil Actions 04-1733, 04-1734, 05-239, and 05-271; and (2) his Motion to Transfer Venue in Civil Action 05-2251 (jointly referred to herein as "Defendant's motion to transfer venue" or "Def. Mot.").

## I.  INTRODUCTION

Plaintiff's opposition fails to rebut the central argument of Defendant's motion to transfer venue:  that, because civil actions 04-1733 and 04-1734 must be transferred to the Eastern District of Virginia, the closely related civil actions 05-239, 05-271, and 05-2251 also should be transferred there for judicial economy, for the convenience of the parties and witnesses, and to avoid duplicative litigation in separate judicial districts.  Indeed, Plaintiff appears to acknowledge that venue likely is improper in the District of Columbia for Civil Actions 04-1733 and 04-1734.  See, e.g., Pl. Opp. at 3 (arguing that venue is proper in the District of Columbia for "at least three out of five Civil Actions:  05-239, 05-271, and 05-2251"); and at 8 ("If three out of five complaints lie properly in this district, . . . it would be in the interest of 'sound judicial

economy' to let the two cases remain in this district because three other related cases are properly filed here."). Given that the first two of Plaintiff's cases must be transferred, her assertions of inconvenience and prejudice fall flat. It clearly is in the interest of justice for all five of Plaintiff's complaints to be transferred to the Eastern District of Virginia for coordinated resolution.

## II. ARGUMENT

A. **Plaintiff Has Failed to Establish Venue in the District of Columbia With Respect to Civil Actions 04-1733 and 04-1734**

    1. **Plaintiff's Title VII claims cannot be brought in the District of Columbia**

        a. **First prong: Plaintiff has conceded that the alleged discriminatory acts occurred solely in the Eastern District of Virginia**

Plaintiff does not dispute that the events alleged in 04-1733 and 04-1734 occurred in Virginia and not in the District of Columbia. See Pl. Opp. at 4-5. She argues instead that, because her five separate complaints challenge a "sequential pattern of events" that started in Virginia in 1991 and ended in the District of Columbia in 2004, venue should be proper in the District of Columbia for all five complaints. Id. This argument is unavailing.

First, it is misleading for Plaintiff to assert that her "complaints arose sequentially in Virginia and in the District of Columbia." See Pl. Opp. at 5. To the contrary, in 04-1733 and 04-1734, Plaintiff's own allegations make clear that <u>all</u> of the challenged employment decisions—which allegedly took place from 1991 through 2000—occurred at NAVSEA headquarters in Arlington, Virginia. See Complaint 04-1733 at ¶¶ 31-90; Complaint 04-1734 at ¶¶ 21-62. Only in 05-239, 05-271, and 05-2251 does Plaintiff allege any discriminatory conduct that allegedly occurred in Washington, D.C. See Complaint 05-239 at ¶¶ 5-14; Complaint 05-271 at ¶¶ 5-14; and Complaint 05-2251 at ¶¶ 5-12.

Second, that the latter three civil actions challenge, in part, employment decisions allegedly occurring in the District of Columbia does not somehow confer proper District of Columbia venue on 04-1733 and 04-1734. It is well-settled that, to establish proper venue, a plaintiff must "demonstrate proper venue with respect to each cause of action and each [defendant]." See Lamont v. Haig, 590 F.2d 1124, 1135 (D.C. Cir. 1978) (construing 28 U.S.C. § 1391(e)). It is undisputed that Plaintiff's Title VII claims in 04-1733 and 04-1734 are based exclusively on events allegedly occurring in Virginia. That venue may be proper in the District of Columbia in separate civil actions alleging separate causes of action has no bearing on whether venue is proper for Plaintiff's Title VII claims in 04-1733 and 04-1734.[1]

In short, venue is not proper under prong one of Title VII's venue provision because none of the allegedly discriminatory acts challenged in 04-1733 and 04-1734 occurred in the District of Columbia.

      b.      **Second Prong: Plaintiff has not established that the relevant employment records are maintained and administered in the District of Columbia**

While acknowledging that her Official Personnel Folder ("OPF") currently is maintained in St. Louis, Missouri, Plaintiff argues that records relevant to her claims can be *found* in the District of Columbia because *copies* of such records allegedly are maintained by certain NAVSEA offices and personnel at the Washington Navy Yard in Washington, D.C. Plaintiff's argument is precluded by the holding in Washington v. General Electric Corp., 686 F. Supp. 361 (D.D.C. 1988).

In Washington, the plaintiff's employment records were maintained and administered at the defendant's plant in Charlottesville, Virginia, where Plaintiff had worked for part of her

---

[1] Plaintiff cites to Spencer v. Rumsfeld, 209 F. Supp. 2d 15 (D.D.C. 2002). See Pl. Opp. at 5. Spencer, however, has no discernable connection to Plaintiff's argument.

3

employment. Plaintiff sought to establish venue in the District of Columbia by asserting that a *copy* of her employment records also was on file at the Equal Employment Opportunity Commission in Washington, D.C. The Court specifically rejected this argument:

> Although Congress could easily have written the statute to make venue proper in *any* judicial district in which employment records may be found, it did not choose to do so. Rather, the prong of the Title VII venue statute that concerns employment records speaks of "*the* judicial district" in which employment records are "maintained and administered." From the statute's use of the singular, it is clear that Congress intended venue to lie on the basis of the presence of records only in the one judicial district in which the complete, "master" set of employment records is "maintained and administered." That one district is the Western District of Virginia.

686 F. Supp. at 363. Accord Counts v. Reno, 1996 WL 148510 (D.D.C. 1996) (rejecting plaintiff's claim that venue was proper in District of Columbia due to FBI's maintenance of copies of personnel records at FBI Headquarters).

Accordingly, Plaintiff's speculation that copies of her relevant personnel records may be kept by various administrators at the Washington Navy Yard[2] is irrelevant to the venue analysis. The only relevant inquiry is: where is the "complete, 'master'" set of records maintained and administered? As shown in the declarations of Edward S. Godfrey, attached as Exhibits A and B to Defendant's motion to transfer venue, Plaintiff's OPF is archived in St. Louis, Missouri. See Def. Mot., Exhibits A and B, ¶ 2, p. 1-2. As its name implies, the Official Personnel Folder must be deemed the "complete, 'master'" set of employment records.[3] Thus, the Eastern District of

---

[2] Plaintiff bases her assertion on her mere "belie[f]," that copies of performance and monetary awards, and of time and attendance records, "traditionally" are kept by various Program Executive Office ("PEO") administrative officers who are stationed at the Washington Navy Yard. See Pl. Opp. at 5-6. Speculation, of course, is inadmissible, and is not a proper basis for decision. See Fed. R. Evid. 701 (opinion testimony inadmissible unless "rationally based on the perception of the witness"). Compare Brown v. Brody, 199 F.3d 446, 458-59 (D.C. Cir. 1999) (holding speculation insufficient to avoid summary judgment).

[3] Plaintiff asserts that the records relevant to her claims are her "performance and monetary awards, and time and attendance records, among others." See Pl. Opp. at 5-6. As shown in the

4

Missouri is "*the* judicial district" in which venue is proper under the second prong of Title VII's venue provision.

Plaintiff cites to an unpublished decision, Saran v. Harvey, 2005 U.S. Dist. LEXIS 8908 (D.D.C. May 9, 2005), for the proposition that personnel records archived in St. Louis, Missouri, cannot be deemed to be "maintained and administered" in Missouri.  See Pl. Opp. at 7.  In Saran, the plaintiff had been employed at a U.S. military facility in Turkey until 1990.  2005 U.S. Dist. LEXIS 8908, * 3.  She alleged that her employer had discriminated against her during her employment in Turkey.  Id. at *3-4.  By the time she filed suit in 2004, it appeared—though it was not certain—that her employment records had been archived in St. Louis, Missouri.  Id. at *7-11.  The Court determined that the plaintiff's employment records could not be deemed to be "maintained and administered" in Missouri for "two reasons":

> First, defendants are not certain that plaintiff's records are kept in Missouri.  Second, even if the records are in Missouri, they are not being "maintained and administered" there.  Defendants state that if the records are in Missouri, they are only there to be archived because Plaintiff is no longer an employee of DOD.  During the plaintiff's employment, and at the time of the alleged discriminatory conduct, plaintiff's employment records were maintained and administered in Europe.

Id. at *10-11.

With respect to the Court in Saran, Defendant believes that this aspect of Saran was incorrectly decided.[4]  Indeed, while Saran purports to look to the place where the employment records were maintained and administered at the time of the alleged discriminatory practice—i.e.

---

attached declaration of William D. McCafferty, official copies of performance and monetary awards are maintained in employees' official personnel folders.  See Exhibit 1 hereto (McCafferty Decl.) at ¶ 4.  Official copies of time and attendance records are maintained by the Defense Finance and Accounting Service ("DFAS") in Charleston, South Carolina.  Id. at ¶ 5.

[4] Saran also is distinguishable from the case at bar.  Whereas in Saran, the defendant was unsure whether the plaintiff's records had been transferred to St. Louis, no such uncertainty exists here.

5

*in the past*—42 U.S.C. § 2000e-5(f)(3) is phrased in the present tense.[5] It states that venue may lie "in the judicial district in which the employment records relevant to [the alleged discriminatory] practice *are* maintained and administered." (Emphasis added). Thus, Saran appears to conflict with the plain language of the statute. Compare Lamie v. United States Trustee, 540 U.S. 526, 534 (2004) ("when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.").

Saran also appears to conflict with Washington, which is a published case. In Washington, as in Saran, the plaintiff no longer was employed by the defendant at the time she filed suit. 686 F. Supp. at 362 (plaintiff was employed with defendant until 1986, filed suit in 1988). It was undisputed that her employment records were stored at the defendant's Charlottesville plant, where the plaintiff had worked for part of her employment. Id. at 363. Though the records clearly were simply archived at the Charlottesville plant—Plaintiff no longer being employed with the defendant—the Court still found that "defendant's records relating to plaintiff's employment are 'maintained and administered' at defendant's Charlottesville plant," and that, accordingly, venue was proper in the Western District of Virginia. Id.

Given the plain language of the statute, and in light of Washington, Defendant respectfully submits that, because Plaintiff's OPF currently is maintained in St. Louis, Missouri, her employment records must be deemed to be "maintained and administered" there. Thus,

---

[5] By contrast, the first prong of Title VII's venue provision is phrased in the past tense. It provides for venue in the judicial district "in which the unlawful employment practice is alleged to *have been committed*." (Emphasis added). Had Congress wished the second prong to refer to the same timeframe, it would have provided for venue "in the judicial district in which the employment records relevant to [the alleged discriminatory] practice *were* maintained and administered *at the time the unlawful employment practice is alleged to have been committed*."

venue cannot lie in the District of Columbia under the second prong of Title VII's venue provision.[6]

    c.  **Fourth Prong: Plaintiff has failed to establish that Defendant cannot be found in Virginia**

Plaintiff's opposition specifically acknowledges that she is not relying on the third prong of Title VII's venue provision. See Pl. Opp. at 7. Instead, as her final argument, she asserts that venue is proper in the District of Columbia under the fourth prong of the venue provision. Id. at 7-8. The fourth prong is applicable only when the defendant cannot be found in any of the first three venue locations. See James v. Booz-Allen & Hamilton, Inc., 227 F. Supp. 2d 16, 24 (D.D.C. 2002) (proceeding to fourth prong when "defendant cannot be found in any other districts where venue is appropriate"). Plaintiff contends that she could not have brought 04-1733 and 04-1734 in Virginia because Defendant shifted its headquarters to Washington, D.C. in July 2001. See Pl. Opp. at 7. Plaintiff is mistaken. The Naval Sea Systems Command, a component of the Department of the Navy, shifted its headquarters in 2001. Defendant, however—the Secretary of the Navy—has continuously maintained his headquarters at the

---

[6] Plaintiff also asserts, again on the basis of pure speculation, that Nanette Oppenheimer has copies of some records relevant to Plaintiff's EEO complaints. See Pl. Opp. at 6. As Ms. Oppenheimer attests in the attached declaration, she was the agency's counsel of record for the EEO administrative proceedings Plaintiff pursued before initiating the instant civil actions. See Oppenheimer Decl., attached hereto as Exhibit 2, at ¶ 2. The law is clear that the processing of a plaintiff's administrative complaint is insufficient to create venue under 42 U.S.C. § 2000e-5(f)(3). See Amirmokri v. Abraham, 217 F. Supp. 2d 88, 90-91 (D.D.C. 2002) ("records relating to plaintiff's unlawful employment practice complaint and the investigation thereof . . . are not 'employment records' within the meaning of the statute."). See also Middlebrooks v. England, 2005 U.S. Dist. LEXIS 34949, *8 (D.D.C. 2005) ("Using employment records to process an administrative complaint is not considered maintaining and administering the records for purposes of establishing venue under 42 U.S.C. § 2000e-5(f)(3)."); Lee v. England, 2004 WL 764441, * 1 (D.D.C. Mar. 9, 2004) (establishing venue based on the administrative processing of plaintiff's complaint through the Washington Navy Yard Human Resources Office would "sidestep the language of [the venue provision], which deals not with administrative processing of the litigation but the maintenance and administration of employment records relevant to the challenged employment practice").

Pentagon, in Arlington, Virginia.  See Exhibit 2 hereto (Oppenheimer Decl.) at ¶ 1.  Therefore, Plaintiff cannot rely on the fourth prong of Title VII's venue provision to establish venue in the District of Columbia.

> **2.  Plaintiff has failed to establish venue in the District of Columbia for her ADEA claims**

In Defendant's motion to transfer venue, he mistakenly suggested that venue for the ADEA claims in 04-1733 and 04-1734 was proper in the District of Columbia.  See Def. Mot. at 6.  In actual fact, venue for those ADEA claims is proper only in the Eastern District of Virginia.  Specifically:  (1) the defendant (the Secretary of the Navy) resides in Virginia, at the Pentagon; (2) both causes of action, which challenge conduct allegedly occurring from 1991 to 2000 (when Plaintiff still was employed in Arlington, Virginia), arose in Virginia; and (3) Plaintiff resides in Virginia.  See 28 U.S.C. § 1391(e).

Thus, venue for all of Plaintiff's claims in 04-1733 and 04-1734—both the Title VII and the ADEA claims—is improper in the District of Columbia.

> **3.  Pendent venue is inapplicable**

In a last ditch effort to save venue in the District of Columbia, Plaintiff asserts that, even if venue is improper in the District of Columbia for 04-1733 and 04-1734, this Court should exercise "pendent venue" over those cases because venue is proper here for 05-239, 05-271, and 05-2251.  See Pl. Opp. at 9-10.  Plaintiff's reliance on the dubious doctrine of pendent venue is misplaced.

At the outset, it is far from clear that the doctrine of pendent venue even applies in this Circuit.  The very case on which Plaintiff primarily relies, Reuber v. U.S., 750 F.2d 1039 (D.C. Cir. 1985), acknowledges that "there is no precedent in this circuit dealing with the general availability of pendent venue."  Id. at 1048.  The Reuber Court declined to address the issue,

8

instead holding that, even "assuming pendent venue is available as a theory, the district court was justified in refusing to apply it." Id.  Plaintiff has cited no D.C. Circuit authority specifically adopting pendent venue as a generally available theory of venue.

Even if pendent venue were generally available in this Circuit, it is unclear that the doctrine may be applied in Title VII cases.  As at least one court in this Circuit has held that, "[i]n enacting the special Title VII venue statute Congress deliberately sought to limit the venues in which Title VII actions might be brought.  Under such circumstances, the court lacks the authority to ignore the congressional intent to limit venue by finding pendent venue." Bartel v. FAA, 617 F. Supp. 190, 198 n.33 (D.D.C. 1985).  Compare McCarthy v KFC Corp., 1984 WL 1048 (N.D. Ill. 1984) (in case in which plaintiff attempted to bring both general venue claim and pendent Title VII claim, court held that "an assertion of pendent venue over the Title VII claim would effectively supercede [the] Congressionally mandated exclusivity [of the Title VII venue provision].").

In cases against the United States, the doctrine of sovereign immunity further militates against applying pendent venue to claims—like Title VII claims—governed by a special venue statute.  Indeed, it is well established that, "when the United States waives sovereign immunity, it may choose the conditions under which a suit against it is to proceed." Reuber, 750 F.2d at 1048.  See also Lehman v. Nakshian, 453 U.S. 156, 161 (1981) ("limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied"); United States v. Sherwood, 312 U.S. 584, 586 (1941) ("The United States, as sovereign, is immune from suit save as it consents to be sued, ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.").  In Title VII, Congress has specified certain venues as the only ones in which a Title VII claim may be brought.  See 42

U.S.C. § 2000e-5(f)(3); see also James, 227 F. Supp. 2d at 20 ("If the plaintiff brings suit in a jurisdiction that does not satisfy one of the venue requirements listed in 42 U.S.C. § 2000e-5(f)(3), venue is improper."). Congress having conditioned the waiver of sovereign immunity, *inter alia*, on a restrictive venue provision, there must be a "strong negative presumption against courts finding discretionary pendent venue elsewhere." Reuber, 750 F.2d at 1048-49 (discussing restrictive venue provision of the Federal Tort Claims Act).

Lastly, even accepting, *arguendo*, the availability of pendent venue for Title VII claims against the federal government, Plaintiff here seeks to expand the doctrine far beyond any accepted formulation and apply it, not to several claims that are part of the same lawsuit, but to a host of claims brought in separate lawsuits. See Pl. Opp. at 9-10 (arguing that "all of the Plaintiff's five complaints" share a common nucleus of operative fact, have similar issues of proof, and have common witnesses). Plaintiff has cited no authority whatsoever for such a broad application of pendent venue.

Leaving aside the legion conceptual difficulties in Plaintiff's argument, it is abundantly clear that the putative "pendent" claims in 04-1733 and 04-1734, and the putative "principal" claims in 05-239, 05-271, and 05-2251, see Reuber, 750 F.2d at 1048, do not meet the requirements of the putative doctrine. See Pl. Opp. at 9. Specifically, the pendent and the principal claims present many distinct issues of proof. Civil actions 04-1733 and 04-1734 allege not only sex and age discrimination and retaliation, but also national origin discrimination. See 04-1733 (Count III); see also 04-1734 at ¶ 1. Civil actions 05-239, 05-271, and 05-2251 do not allege national origin discrimination. Moreover, each of Plaintiff's five lawsuits, while recounting the same background facts, challenges a different set of discrete employment actions taken by different supervisors at different periods of time. The evidence needed to support each

claim in each case necessarily will vary depending both on the protected class at issue and on the employment action challenged. Thus, pendent venue should not apply. Compare Reuber, 750 F.2d at 1048-49 (declining to apply pendent venue to FTCA claim where principal claim was Privacy Act claim); Archuleta v. Sullivan, 725 F. Supp. 602, 605-06 (D.D.C. 1989) (declining to apply pendent jurisdiction where plaintiff alleged discrimination in violation of Title VII, the Rehabilitation Act, and the ADEA); Hayes v. RCA Service Co., 546 F. Supp. 661 (D.D.C. 1982) (declining to apply pendent venue to discrimination claims raised under Title VII and 42 U.S.C. 1981).

**B.     Plaintiff Has Failed to Show that Civil Actions 05-239, 05-271 and 05-2251 Should Not Be Transferred to the Eastern District of Virginia under 28 U.S.C. § 1404(a)**

In his motion to transfer venue, Defendant argued that, because 04-1733 and 04-1734 must be transferred to the Eastern District of Virginia, and because the remaining three cases contain many of the same allegations as those asserted in 04-1733 and 04-1734, all five cases should be moved to Virginia for the convenience of the parties, to avoid be duplication of witness testimony, to prevent circumvention of Title VII's cap on damages, and to avoid having two different Courts adjudicate duplicative claims.

Plaintiff does not dispute Defendant's reasons for transferring the cases to Virginia. Instead, she offers several reasons for keeping the cases here, none of which are persuasive. She argues, first, that 05-239, 05-271, and 05-2251 should remain here because this Court has become familiar with the case history and facts of the cases and has had occasion to rule on a motion for summary judgment filed by the Plaintiff, as well as a motion to dismiss filed by Defendant. See Pl. Opp. at 12-13. While Defendant cannot speak to the level of familiarity this Court has acquired with the facts of 05-239, 05-271, and 05-2251, it bears emphasizing that the Court has yet to confront any substantive issues. The two motions Plaintiff cites (which were

11

filed only in 04-1733 and 04-1734) were purely procedural, relating solely to whether Plaintiff had properly served the U.S. Attorney's Office. This Court has not been addressed the merits in any of the five cases.

Second, Plaintiff asserts that Defendant would not be harmed or inconvenienced by having to defend 05-239, 05-271, and 05-2251 in the District of Columbia. See Pl. Opp. at 14-16. This assertion is patently incorrect. Defendant would incur significant unnecessary expense if he were forced to litigate duplicative claims in both the District of Columbia (05-239, 05-271, and 05-2251) and the Eastern District of Virginia (04-1733 and 04-1734). The same is true for any witnesses that will be common to more than one case.[7]

Third, Plaintiff suggests that she would suffer harm if the cases were moved to Virginia because she allegedly would have to select another attorney—her attorney not being licensed to practice law in Virginia. See Pl. Opp. at 16. This assertion is specious, as Plaintiff's attorney obviously could obtain *pro hac vice* status in the Eastern District of Virginia, which would allow her to represent Plaintiff in that Court. The same is true of Plaintiff's suggestion that her cases would be unduly delayed by a transfer to the Eastern District. As Plaintiff is well aware, the Eastern District of Virginia operates on speedy docket system.

In short, Plaintiff has failed to rebut Defendant's reasons for transferring all five cases to the Eastern District of Virginia, and has failed to adduce any persuasive reasons for keeping three of the five in the District of Columbia while the other two are sent to the Eastern District of Virginia.

---

[7] Plaintiff blithely asserts, without any record support, that "all or almost all the witnesses . . . are easily accessible in the District of Columbia." See Pl. Opp. at 14. In fact, of the 10 alleged discriminating officials identified in Plaintiff's complaints, only two are current employees of NAVSEA: Rear Admiral Charles Hamilton and Alan Weyman. The rest are retired and live in various parts of Virginia, Alabama, North Carolina, and Florida. See Exhibit 2 hereto (Oppenheimer Decl.) at ¶¶ 3-7.

**C.     Consolidation Is Inappropriate**

As to Plaintiff's suggestion that the five cases should be consolidated into one case that properly could remain in the District of Columbia, the suggestion is inappropriate. Under LCvR 40.5(d), motions to consolidate may be brought only with respect to "cases assigned to different judges." All five of the cases at bar already are assigned to the same judge.

### III.  CONCLUSION

Based upon the foregoing, Defendant respectfully requests that Civil Actions 04-1733 and 04-1734 be dismissed for improper venue or, in the alternative, transferred to the District Court for the Eastern District of Virginia. Further, Defendant respectfully requests that Civil Actions 05-239, 05-271, and 05-2251 be transferred to the District Court for the Eastern District of Virginia for the convenience of the parties and witnesses and in the interests of justice.

Respectfully submitted,

/s/
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

/s/
R. CRAIG LAWRENCE, D.C. Bar #171538
Assistant United States Attorney

/s/
STRATTON C. STRAND, D.C. Bar #464992
Assistant United States Attorney